# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                          Case No. 14-cr-186 (PAM/JJG)

      Plaintiff,

v.                                                 **REPORT AND RECOMMENDATION**

Michael Anthony Lindsey (1),

      Defendant.

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the undersigned United States Magistrate Judge on Defendant Michael Anthony Lindsey's Motion to Suppress All Evidence Obtained from Unlawful Searches and Seizures (ECF No. 15).[1] The Court held an evidentiary hearing on July 14, 2014. Amber M. Brennan appeared on behalf of the United States of America, and Daniel L. Gerdts appeared on behalf of Defendant. The briefing on the dispositive motion was complete on July 25, 2014. As briefing was in progress, Defendant filed a motion for a *Franks* hearing (ECF No. 29).

## I.      Background

On June 9, 2014, Defendant was indicted for one count of being an armed career criminal in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(e). At the July 14 hearing, the Government called one witness, Sergeant David Swierzewski of the Minneapolis Police Department, and offered into evidence for the limited purpose of the suppression hearing three exhibits: Government Exhibit 1, a compact disc with an audio and video recording of the squad video; Government Exhibit 2, the search warrant and supporting affidavit for the search of a

---

[1]      The parties' nondispositive motions were addressed in a separate Order (ECF No. 26).

Buick LeSabre; and Government Exhibit 3, the search warrant and supporting affidavit for a buccal swab DNA sample of Defendant. Defendant also introduced two exhibits: Defendant's Exhibit 1, a compact disc containing a recording of a 911 call; and Defendant's Exhibit 2, a compact disc containing a recording of a witness interview.

### A.      Sergeant Swierzewski's Testimony

Sergeant Swierzewski testified that he works for the Minneapolis Police Department, primarily on patrol with the 911 emergency response squad. In the early morning hours of April 6, 2014, he was working patrol with his partner, Officer Jeddeloh, in the Phillips neighborhood of south Minneapolis, when they received a 911 call of shots fired near 33rd Street and Fifth Avenue. Dispatch told the officers that the caller saw a four-door, light-colored or tan vehicle firing shots and stated that the vehicle was circling the area. When Sergeant Swierzewski and Officer Jeddeloh arrived in the neighborhood to respond to the call, they spotted a vehicle matching the caller's description which was traveling at a high rate of speed south on Fifth Avenue. The vehicle was a Buick LeSabre, and they began to follow it from approximately 250 to 300 feet behind. While the officers followed the vehicle, dispatch relayed that the caller had seen the squad car trailing the suspect vehicle when it passed the caller's house again. The officers followed the vehicle as to turned west onto 35th Street and north onto Second Avenue before taking the exit for northbound Interstate 35W. After observing the conduct of the vehicle's driver on the exit for 35W, Sergeant Swierzewski manually activated the squad car's video recorder at approximately 1:22 a.m.

At the hearing, the Government played the squad video as Sergeant Swierzewski described what was happening. He saw the vehicle swerving all over the road, crossing the left lane and swerving into the shoulder. The vehicle took the offramp for Interstate 94 west, almost

2

struck the barrier on the right, and kicked up dust on the right shoulder of the road. Once on the highway, the vehicle was not moving particularly fast, but the driver could not stay in a single lane and continued swerving back and forth. The vehicle then moved from the far right-hand lane to the lane on its left before crossing back into the right lane. As it entered the Lowry Tunnel, it crossed from the far right lane into the far left lane, moving across the solid white lines that separate each lane of traffic in the tunnel. The car then swerved and almost hit the left-side wall of the tunnel twice. As the squad car reached the footbridge connecting Loring Park to the Walker Art Center, the officers activated the squad car's emergency lights and siren to stop the vehicle. Sergeant Swierzewski explained that the officers did not attempt to stop the vehicle earlier because they were waiting until assisting squads were in position behind them. At least one assisting squad also activated its emergency lights and siren.

The vehicle failed to stop, continued westbound on Interstate 94, and then exited on Olsen Memorial Highway. The vehicle continued up the offramp and almost hit the concrete median. Upon reaching the red light at the top of the ramp, the vehicle stopped. The driver of the vehicle appeared to take off his seatbelt, lean to the right, and make furtive movements as if he were recovering something from the passenger side of the vehicle. Another officer yelled out that the driver was reaching for something. An officer shouted, "Hands," for the driver to show his hands, but the driver did not do so. An officer then shouted, "Put your hands up." After several further shouts from officers to raise his hands, the driver still had not done so. A short time later, an officer told the driver over loudspeaker, "Driver, step out of the vehicle, put your hands up, do it now." The driver appeared to be lifting his arms to comply with the officer's order, and then the driver's side door opened, and the driver stepped out. It took approximately thirty seconds for the driver to comply with officers' orders.

Officer Jeddeloh arrested the driver—Defendant—for felony fleeing in a motor vehicle and handcuffed him. Sergeant Swierzewski and another officer approached the vehicle to check whether any other occupants were inside the vehicle. After determining that Defendant was the sole occupant, Officer Jeddeloh initiated a search of the vehicle from the driver's side, and Sergeant Swierzewski began to search the vehicle from the passenger's side. Under Minneapolis Police Department policy, personnel on the scene conduct an inventory search of a vehicle whenever the vehicle is going to be towed or impounded. Police planned to tow the vehicle because it was an instrument in the crime of fleeing police in a motor vehicle. When Sergeant Swierzewski leaned into the vehicle to begin the search, he immediately saw a small, semiautomatic handgun underneath the front left portion of the front passenger seat—i.e., on the side closer to the driver. Sergeant Swierzewski did not need to move anything in the vehicle in order to see the gun. He then gestured to another officer off camera to indicate that he found a gun. Once the gun and shell casings were located in the vehicle, the officers stopped the search because the vehicle was being taken for evidence.

**B.      911 Call**

Defendant entered into evidence a disc containing the audio recording of a witness's call to 911 (Def.'s Ex. 1). The caller told dispatch that someone started shooting at his car as he was parking it on the 3300 block of Fifth Avenue. He thought the shooter fired six shots, but none of them hit him, only his car. The caller also stated that the car that fired the shots was blue, perhaps a Chevrolet, which headed north on Fifth Avenue.

**C.      Witness Interview**

Defendant also entered into evidence an audio recording made at 4:00 p.m. on April 8, 2014, of Sergeant Christopher House's interview of the victim of the shooting (Def.'s Ex. 2). He

told Sergeant House that, around 1:30 a.m. on April 6, he was facing north while parking his car in front of his house at 3317 Fifth Avenue when another car pulled up beside him and started shooting. The victim was certain he saw two people in the car and believed they shot at him five or six times. He ran into the house when he heard the shots fired. He then saw the vehicle turn around and come back to his car. When the occupants of the vehicle realized no one was in the vehicle anymore, the car "burn[ed its] tires" and took off heading southbound.

D.     **Warrants**

Hennepin County District Court issued two search warrants in relation to this case, both of which rely on many of the same underlying facts described above. The first was issued on April 7, 2014. Sergeant House applied for a search warrant to obtain a buccal sample of Defendant's DNA. In the affidavit supporting the warrant application, Sergeant House stated that he is employed as an investigator by the Minneapolis Police Department and investigates weapons crimes in Minneapolis. In preparing his affidavit, he reviewed police reports of the events leading to Defendant's arrest on April 6, 2014, which contained the following information:

Officers responded to a 911 caller's claim that someone had shot at him. At least one other caller to 911 also heard shots fired. The caller provided a description of the suspect vehicle, and police located a vehicle matching that description when they arrived in the area of the call. Although officers attempted to stop the vehicle, the driver did not comply. The driver eventually stopped, and officers saw him lean and reach under the seats. The driver was arrested, and police found a handgun previously reported as stolen under the passenger seat.

When Sergeant House reviewed Defendant's criminal history, he learned that Defendant is prohibited from possessing firearms because of previous felony convictions for crimes of

violence. Sergeant House requested permission to obtain a DNA sample from Defendant in order to compare the sample to one found on the gun recovered from the vehicle. The district court issued the warrant, and it was executed the same day.

The second warrant was issued on April 8, 2014, in response to an application to search Defendant's Buick LeSabre. In the supporting affidavit, Sergeant House relied on the same narrative of events used in the first search warrant. Additionally, Sergeant House noted that the officers searching the vehicle reported seeing a discharged cartridge casing on the floor of the car, which they left in the vehicle because they believed it to be evidence in a related assault case. The car was towed to the Minneapolis Impound Lot and secured. The district court issued the warrant, and the inventory sheet indicates the recovery of three discharged cartridge casings from the vehicle.

## II.     Motion to Suppress Evidence Obtained Through Illegal Search

Defendant concedes that police possessed probable cause to stop his vehicle based on the driving behavior they observed. But, he contends, the search of the vehicle at the time of his arrest was impermissible, and the search warrants Sergeant House later obtained are invalid because they rely on evidence from that illegal search to establish probable cause.

### A.     Search of Defendant's Vehicle on April 6, 2014

The United States Constitution prohibits "unreasonable" searches and seizures. U.S. Const. amend. IV. Warrantless searches are per se unreasonable unless they fall into one of a few carefully defined exceptions. *United States v. Harris*, 747 F.3d 1013, 1016 (8th Cir. 2014). The search incident to arrest and automobile exception are two such exceptions. *See United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009) (listing search incident to arrest and the automobile exception as recognized exceptions to the warrant requirement).

6

### 1.  Probable Cause

Probable cause justifies a search or seizure. *Whren v. United States*, 517 U.S. 806, 819 (1996). "Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010). In evaluating whether probable cause exists, a court examines the totality of the circumstances, "apply[ing] a common sense approach" and "considering all relevant circumstances." *United States v. Hager*, 710 F.3d 830, 836 (8th Cir. 2013).

The totality of the circumstances here indicates that Sergeant Swierzewski and Officer Jeddeloh were summoned to investigate a shooting. When they arrived in the area and noticed a vehicle matching the description given by 911 dispatch as the vehicle involved in the shooting, they followed it for several minutes. Once the officers activated their squad car's lights and siren, the driver of the vehicle did not stop. Dispatch also relayed to the officers that the 911 caller had seen a squad car following the suspect vehicle when they passed by the caller's house again. When the driver finally did stop, he made furtive movements toward the passenger side of the car and failed to comply with officers' orders to show his hands and exit the vehicle for approximately thirty seconds. These circumstances, taken together, indicate a fair probability that Defendant, the driver of the vehicle, was involved in the shooting incident. *See United States v. Jones*, 452 F.2d 884, 888 (8th Cir. 1971) ("[D]efendant, by his surreptitious tearing up of the stolen check as the officers approached and by his furtive movements in attempting to conceal the pieces, reasonably alerted the police officers to the fact that he may have been involved in some other illegal activity and was trying to conceal evidence of that activity from the police as

7

they sought to arrest him for traffic violations."); *Schook v. United States*, 337 F.2d 563, 565-66 (8th Cir. 1964) (holding that defendant driver's "deliberate refusal to stop" his vehicle when police sounded sirens and his furtive actions within the car supported a finding of probable cause that defendant was "escaping from or in the process of committing a felony"). In sum, police possessed probable cause to arrest Defendant for his involvement in the shooting near 33rd Street and Fifth Avenue.

### 2.  Search Incident to Arrest

A search of a vehicle incident to a lawful arrest of an occupant is proper (1) "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," *Arizona v. Gant*, 556 U.S. 332, 343 (2009), or (2) "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle," *id.* (quotation omitted). The first justification does not apply here, as Defendant was several feet away from the vehicle and in handcuffs when police began to search the car. Defendant argues that, because evidence of the crime for which he was arrested, felony fleeing a police vehicle, could not reasonably be found in the car, the search incident to his arrest was unreasonable. Sergeant Swierzewski did testify that Defendant was arrested for fleeing police. But an officer's subjective reason for making an arrest does not control this Court's analysis of the reasonableness of a search under the Fourth Amendment. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[An officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."). Officers possessed probable cause to believe Defendant had participated or aided in the commission of an assault with a firearm, so they were justified in searching the vehicle for guns or ammunition, evidence related to that crime, even though that was not Sergeant Swierzewski's stated reason for arresting Defendant. Therefore, the search of

Defendant's vehicle on April 6, 2014, was lawful as a search incident to arrest.

### 3.  Automobile Exception

The automobile exception to the warrant requirement "authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *Davis*, 569 F.3d at 816 (quotation omitted). The exception is justified by the "ready mobility" of an automobile and an individual's reduced expectation of privacy in it because cars are pervasively regulated. *Pennsylvania v. Labaron*, 518 U.S. 938, 940 (1996) (per curiam). As discussed above, police possessed probable cause that Defendant had been involved in the shooting and that the vehicle, therefore, contained evidence of the shooting. Officers' search of Defendant's vehicle was lawful under the automobile exception to the warrant requirement.

Because the search of Defendant's vehicle was reasonable both as a search incident to arrest and under the automobile exception to the warrant requirement, the Court does not address the Government's argument that the evidence is admissible under the "inevitable discovery" rule.

### B.      Subsequent Search of Defendant's Vehicle

Defendant contends the search of his vehicle on April 10 or 11, 2014,[2] pursuant to a warrant is unlawful because the principal facts set forth in the affidavit supporting the warrant request arose from evidence acquired unlawfully during the April 6 search of Defendant's car. Consequently, he argues, the warrant is not supported by probable cause. As explained above, however, Defendant's vehicle was lawfully searched, both incident to Defendant's arrest and under the automobile exception.

---

[2] The handwritten date listed on the warrant inventory returned after the warrant was executed was originally written as April 10 and subsequently changed to April 11, or vice versa.

Probable cause to issue a warrant "exists if the warrant application and affidavit describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009) (quotation omitted). "When the issuing judge relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (quotation omitted). Sergeant House's affidavit supporting his search warrant for Defendant's vehicle noted that, in preparing his affidavit, he reviewed the reports of officers who responded to the 911 call, arrested Defendant, and searched his vehicle. Sergeant House stated that the reports note that when the officers began their search, they saw a handgun, which had previously been reported and listed as stolen, under the front seat. When they removed the firearm, they also noticed a discharged cartridge casing on the floor of the vehicle. In addition to relaying information learned from officers' reports, Sergeant House stated that Defendant is prohibited from possessing firearms.

The four corners of the warrant show a fair probability that evidence of the shooting— namely, the cartridges officers saw on April 6—would be found in Defendant's car. Therefore, probable cause existed to search the vehicle, and the evidence found within it should not be suppressed.

### C.    Search of Defendant's Person for DNA Evidence

Defendant argues the Court should suppress DNA evidence obtained from a buccal swab of him. But, as analyzed above, the warrant is supported by probable cause, and the search of the vehicle which revealed the gun was done lawfully. Police officers needed a sample of Defendant's DNA to compare it to the DNA found on the weapon in Defendant's vehicle. The

evidence obtained from Defendant's DNA sample should not be suppressed.

### III.   Motion for *Franks* Hearing

Defendant moved this Court for a *Franks* hearing, arguing that the warrant affidavit supporting the search of his vehicle contained factual misrepresentations and omissions undermining the finding of probable cause necessary for a warrant to be issued. (ECF No. 29.) Defendant specifically alleges Sergeant House omitted from the affidavit the fact that the vehicle he sought to search did not match the description given by the 911 caller and that the other evidence he cited in support of probable cause was acquired in an unlawful search incident to arrest.

Affidavits supporting a search warrant are presumed valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). "Under *Franks*, a criminal defendant may request a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013). But for such a request to be granted, a defendant must first make "a substantial preliminary showing," *Franks*, 438 U.S. at 155, that the affidavit supporting the warrant "contained false statements or omissions that were material to the finding of probable cause," *United States v. Oleson*, 310 F.3d 1085, 1090 (8th Cir. 2002). This threshold is not easily met, *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002), and Defendant has not done so here.

The record contains no indication that Sergeant House deliberately omitted any information from his search warrant affidavit. At the hearing, Sergeant Swierzewski testified that dispatch relayed that a 911 caller described the offending vehicle as a tan or light-colored four-door car. When Sergeant Swierzewski and his partner arrived in the area, they noticed a vehicle

11

matching that description—the vehicle that Defendant was driving—and began to follow it. That the officers were following the correct vehicle was confirmed when dispatch relayed to the officers that the caller had seen the squad car following the vehicle when it passed the caller's house again. Although 911 also received a call from someone claiming to have been shot at by a person in a blue Chevrolet that "for sure" contained two people, Sergeant House's affidavit notes that police received at least *two* calls to 911 about the incident. The call received into evidence at the hearing was not the only call 911 received that evening, and the description dispatch relayed about a four-door, light-colored or tan vehicle matched the scene on the ground.

Defendant also argues that "S[ergeant]. House further omitted that the other evidence he cited as supporting probable cause was acquired in a search incident to the custodial arrest of Defendant, which the Supreme Court has held not to be reasonable under the Constitution." Presumably Defendant refers to the gun discovered underneath the front passenger seat of the car. Defendant is incorrect in characterizing the gun as a product of an unlawful search. As discussed above, officers found the gun when they were conducting a search of the vehicle that was lawful incident to Defendant's arrest as well as under the automobile exception. Because the search was lawful, Sergeant House did not omit any material information when describing in his affidavit how the gun was found.

Even if these omissions were material and made intentionally or recklessly, and even if the information from these omissions had been included in the affidavit, that information would not have negated the issuing judge's finding of probable cause. Probable cause exists when, "in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013) (quotation omitted). "Information contained in applications and affidavits for search

warrants must be examined in the totality of the circumstances presented. Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference." *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) (citation omitted). As discussed in the previous section, the four corners of the affidavit contain information sufficient to find that probable cause existed to search Defendant's car and compel him to submit to a cheek swab for a DNA sample. Even if Sergeant House had included in his warrant application the 911 caller's remark that the vehicle he saw was a blue Chevrolet, the affidavit states that another caller confirmed to the 911 operator that the police were following the correct car when the vehicles passed by the caller's house. The warrants are supported by probable cause.

For these reasons, the undersigned concludes there is no basis for holding a *Franks* hearing and recommends Defendant's motion requesting a *Franks* hearing be denied.

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.     Michael Anthony Lindsey's Motion to Suppress All Evidence Obtained from Unlawful Searches and Seizures (ECF No. 15) be **DENIED**; and

2.     Michael Anthony Lindsey's Motion for a *Franks* Hearing (ECF No. 29) be **DENIED**.

Dated: August 8, 2014.                    *s/Jeanne J Graham*

                                          JEANNE J. GRAHAM
                                          United States Magistrate Judge

**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by  **August 22, 2014** .  A party may respond to the objections within fourteen days after service thereof.   Any objections or responses shall not exceed 3,500 words.  The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the district judge is not required to review a transcript or if the district judge directs otherwise.